UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Plaintiff,

                                   Case No. 1:09-cv-649

v.

                                   Hon. Hugh W. Brenneman, Jr.

COURTNEY DUFFEY and
LEIGH BISHOP

       Defendants.

_____/

**OPINION**

This is a declaratory action filed pursuant to 28 U.S.C. § 2201 by plaintiff State Farm

Mutual Automobile Insurance Company ("State Farm") against defendants Courtney Duffey

(sometimes referred to as "Courtney") and Leigh Bishop (sometimes referred to as "Bishop")

regarding insurance coverage for an accident that occurred in Louisville, Kentucky, on August 19,

2008. State Farm seeks an order declaring that a State Farm insurance policy issued to Courtney

Duffey's father, David Duffey, No. D25 2916-C188-22Q (sometimes referred to as the "Michigan

Insurance Policy") did not provide liability coverage to Courtney, with respect to the Kentucky

accident. The issue before the court is whether Courtney Duffey was insured under the Michigan

Insurance Policy as a "resident relative . . . domiciled in the same household" of David Duffey.

State Farm and Leigh Bishop have consented to have this matter tried by the undersigned pursuant

to 28 U.S.C. § 636(c) and Fed. Rules Civ. Proc. 73.[1]

_____

[1] On September 22, 2009, the Clerk entered a default against defendant Courtney Duffey pursuant
to Fed. R. Civ. P. 55(a). *See* Entry of Default (docket no. 11). A law firm represented Courtney at her
deposition, but withdrew from this action without filing an answer or otherwise contesting the claims against

## FINDINGS OF FACT

Based upon the exhibits received at trial, the facts stipulated by the parties, and the record in this proceeding, the court makes the following findings of fact as required under Fed. R. Civ. Proc. 52(a)[2]:

1.      Defendant Courtney Duffey was born in Lansing, Michigan on July 24, 1990. *See* Courtney Duffey Deposition at pp. 5-6.[3]

2.      Courtney's parents, Elizabeth Jolly and David Duffey, divorced when Courtney was one year old. *Id.* at p. 7.  Courtney understood that her parents shared joint custody of her. *Id.* at pp. 29-30.

3.      Courtney and her mother moved to Kentucky, when Courtney was 4 or 5 years old. *Id.* at 8-9.

4.      Courtney attended elementary school and middle school in Louisville, Kentucky. *See* Courtney Duffey Dep. at pp. 11-12; University of Michigan Application for resident classification ("Resident application") (docket no. 41-1).

5.      Courtney attended high school at the Dupont Manual High School in Louisville, Kentucky, from August 2004 through May 2008. *See* Courtney Duffey Dep. at pp. 11-

---

her. *See* Order allowing withdrawal (docket no. 25).  In short, Courtney has neither denied State Farm's allegations nor tendered a defense in this action.

   [2] Any findings of fact which contain conclusions of law shall be considered as such.  The citations to the record below are representative and not intended to be an exhaustive recounting of all evidence in the record supporting a particular finding.

   [3] The court notes that the copy of Courtney Duffey's deposition filed in support of plaintiff's post-hearing brief omitted pages 6 through 9 of the deposition.  These missing pages can be found in the copy of the deposition filed in support of plaintiff's motion for summary judgment.  *See* Courtney Duffey Dep. (docket no. 21-4 at p. 4).  All other portions of Courtney's deposition are found in the deposition transcript filed with the trial brief.  *See* Courtney Duffey Dep. (docket no. 40-4).

12; *See* University of Michigan Application for undergraduate admission ("Admission application") (docket no. 40-5).

6.      Courtney obtained a Kentucky driver's license in 2007.  *See* Courtney Duffey Dep. at p. 16 (docket no. 40-4); Driver's License (docket no. 41-2).

7.      Courtney was listed as a dependent on her father's 2007 Federal and Michigan Income Tax Returns.  *See* Tax returns (docket no. 42-5).

8.      On her application for admission to the University of Michigan for the Fall of 2008, Courtney listed her address as 6703 Kingslook Court, Lousville, Kentucky.  *See* Courtney Duffey Dep. at  pp. 14-15; Admission application.  Courtney stated that this was her current and permanent street address, that the address was  "valid from: 08/1/2007 to: 08/1/2010," and that she did not consider herself a resident of Michigan.  *See id.* at p. 15; Admission application.

9.      On April 28, 2008, Courtney filed a separate document to apply for resident classification at the University of Michigan.  In response to a question which asked the applicant to list all addresses, "including short-term and temporary addresses .  .  .  where you have physically resided," Courtney listed two addresses where she currently resided: her mother's address at 6703 Kingslook Ct., Louisville, Kentucky (from February 1, 2002 to the present); and her father's address at 20 Green Crest Trail NE, Ada, Michigan (from August 25, 2006 to the present).  *See* Resident application.

10.      Courtney provided additional information on the Resident application as follows:

a.      Courtney was employed in Louisville, Kentucky, working part time jobs from May 1, 2006 through April 28, 2008.  *See id.*

b.      Courtney stated that from September 2006 through September, 2008, she received 50% of her total financial support from her father (who lived in Michigan) and 50% of her total financial support from her mother (who lived in Kentucky). Courtney also stated that she anticipated the same proportion of financial support for the period of September 2008 through September 2009.  *Id.*

c.      Courtney provided the following statement concerning her "purpose in coming" to the State of Michigan:

> I was born in Michigan & lived there for five years.  My entire family lives there including my father.[4] Michigan has always been my home & I come back as often as I can (usually 5 times a year).  It is where I want to live & be which is why I chose the University of Michigan.  I still recieve [sic] financial support from my father & am very close to all my relatives here.

*Id.*

11.     Courtney mailed the resident classification application from Louisville, Kentucky, with a return address of  6703 Kingslook Ct., Louisville, Kentucky.  *See* Envelope (docket no. 41-1).

12.     A letter from the University of Michigan approving Courtney's application for resident classification, dated July 15, 2008, was mailed to her at 6703 Kingslook Ct., Louisville, Kentucky.  *See* Resident classification letter (docket no. 41-3).

13.     Courtney surrendered her Kentucky driver's license and obtained a Michigan driver's license during April or May 2008.  *See* Courtney Duffey Dep. at pp. 17, 31.  Courtney's Michigan driver's license listed her father's address in Ada, Michigan.  *Id.* at pp. 16-17.  When

---

[4] It appears Courtney overlooked her mother when she completed this application, because her mother clearly lived in Kentucky, not Michigan.

asked why she obtained a Michigan driver's license and whether she did it to obtain in-state tuition at the University of Michigan, Courtney explained that "[a]t that point [in time] we didn't know what was required and it would hopefully make things more convenient." *Id.*

14. Courtney did not have her own room at her father's house in Ada, Michigan, never stayed the house for more than about one week at a time, and spent a total of two or three weeks per year at his house. *Id.* at pp. 13, 17-18, 31.

15. Courtney did not maintain any possessions at her father's house in Michigan. *Id.* at pp. 20, 32-33.

16. During the summer of 2008, Courtney worked at the Shiraz Mediterranean Grill in Louisville, Kentucky, and at the Louisville Metro County Mary T. Meagher Aquatic Center. *Id.* at pp. 21-22.

17. Courtney attained the age of 18 on July 24, 2008. *Id.* at p. 6.

18. On August 19, 2008, Courtney was operating a 2007 Toyota Highlander, which was owned by her mother, Elizabeth Jolly. *See* Pre-Trial Memorandum, ¶ 2.b (Uncontroverted Facts) (docket no. 35). At that time, Elizabeth Jolly resided at 6703 Kingslook Court, Louisville, Kentucky. *Id.*

19. Courtney was traveling northbound on West Port Road in Louisville, Kentucky, when she entered the southbound lanes, and struck a vehicle operated by defendant Leigh Bishop. *Id.* at ¶ 2.c. Leigh Bishop subsequently filed a lawsuit seeking money damages against Courtney Duffey in Jefferson County, Kentucky. *Id.* at ¶ 2.d.

20.     On August 19, 2008, the 2007 Toyota Highlander owned by Elizabeth Jolly was insured under a State Farm insurance policy issued in Kentucky (sometimes referred to as the "Kentucky Insurance Policy"), which provided liability limits of $250,000. *Id.* at ¶ 2.e.

21.     On August 19, 2008, the Michigan Insurance Policy which State Farm issued to David Duffey, No. D25 2916-C188-22Q, was in force and effect, and provided liability limits of $250,000.00. *Id.* at ¶ 2.f.; Insurance Policy (docket nos. 40-1, 40-2 and 40-3.   At that time, David Duffey resided at 1120 Green Crest Trail in the City of Ada, Kent County, Michigan.   Pre-Trial Memorandum, ¶ 2.f (Uncontroverted Facts).[5]

22.     The accident report prepared by the Louisville Metro Police Department on August 19, 2008, identified Courtney as possessing a Michigan driver's license, and listed her address as 1120 Green Crest Trail NE, Ada, Michigan.   *See* Accident Report (docket no. 42-1).

23.     Courtney had a checking account at National City Bank in Louisville, Kentucky.   *See* National City statement (docket no. 41-5).   The account statement showing the account's activity from August 23, 2008 through September 10, 2008, was mailed to Courtney at 6703 Kingslook Ct, Louisville, Kentucky.   *Id.*

24.     On September 1, 2008, Courtney came to Michigan to matriculate at the University of Michigan.   *See* Courtney Duffey Dep. at p. 18.

---

[5] The Declarations Page attached to the Michigan Insurance Policy reflects a policy period of April 27, 2007 to September 18, 2007, and listed David Duffey's address as 8242 Vergennes St. NE, Ada, Michigan.   *See* Declarations Page (docket no. 40-3 at p. 11).   However, the court notes (1) that defendant Bishop admitted that this was the policy in force at the time of the accident and (2) that the parties have stipulated that David Duffey lived at the Green Crest Trail address at the time of the accident.   *See* Compl. at ¶ 8 (docket no. 1); Answer at ¶ 8 (docket no. 7); Pre-Trial Memorandum, ¶¶ 2.f and 2.g (Uncontroverted Facts).

25.     Other than using her father's address on her Michigan driver's license and for the purpose of receiving in-state tuition at the University of Michigan, Courtney has considered herself a resident of Louisville, Kentucky, since about age four. *Id.* at pp. 18-19.

26.     As of the date of her deposition (April 24, 2010), Courtney was using her mother's address in Louisville, Kentucky as a mailing address. *Id.* at p. 19. While Courtney was attending college, she received mail in Ann Arbor, Michigan, and then transferred the mail to her address in Kentucky "for the summers." *Id.*

27.     Courtney also received some mail at her father's address in Ada, Michigan. *Id.*

28.     When Courtney completed her freshman year at the University of Michigan, Courtney spent the summer of 2009 "mostly" in Louisville. *Id.* at p. 21.

29.     Courtney intended to spend the summer of 2010 in Louisville. *Id.*

30.     Courtney's cell phone has an area code for Louisville, Kentucky, and her phone service is paid for by her family in Louisville. *Id.*

31.     Courtney testified that she will "probably not" attend graduate school at the University of Michigan. *Id.* at pp. 20-21.

## CONCLUSIONS OF LAW

### I.     Jurisdiction

Plaintiff filed this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332., which provides in pertinent part as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

(1) citizens of different States . . .

28 U.S.C. § 1332(a)(1).

State Farm has alleged diversity of jurisdiction as follows: State Farm is a corporation organized under the laws of the State of Illinois and located in Bloomington, McLean County, Illinois; Leigh Bishop is a resident of the State of Kentucky, residing at 2405 Hermitage Way, Louisville, Kentucky; and Courtney Duffey, at the time of the accident, was also a resident of the State of Kentucky, residing at 6703 Kingslook Court, Louisville, Kentucky. Compl. at ¶¶ 1-3. In the Joint Status Report, Leigh Bishop objected to the court's jurisdiction stating, "Defendant Bishop believes there is no diversity jurisdiction." Joint Status Report at ¶ 1 (docket no. 14). Defendant Courtney Duffey did not participate in the Joint Status Report, having been defaulted prior to the filing of the Report. After filing the Joint Status Report, the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct all further proceedings in this action pursuant to 28 U.S.C. § 636(c). Consent (docket no. 15).

While Bishop initially objected to this court's jurisdiction, she has not raised the issue of jurisdiction in any subsequent motion, brief, response, reply or other paper filed in this action. Nevertheless, because Bishop has not explicitly withdrawn her objection to this court's jurisdiction, the court will address it. The court's jurisdiction under 28 U.S.C. § 1332(a) "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The present litigation involves a determination of Courtney Duffey's domicile for purposes of insurance coverage. Domicile is also determinative of whether diversity exists under § 1332. *See Safeco Insurance Company of America v. City of White House, Tennessee*, 36 F.3d 540, 544 (6th Cir. 1994) ("[t]he court equates the citizenship of

8

a natural person with his domicile"); *Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967)(for purposes of the jurisdictional statute, 28 U.S.C. § 1332, "a person is a citizen of a state if he is domiciled there").

Bishop's objection to this court's diversity jurisdiction is without merit. Bishop does not contest State Farm's allegation that it is a citizen of Illinois, being an Illinois corporation, located in Bloomington, McLean County, Illinois. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"); *Hertz Corp. v. Friend*, -- U.S. --, 130 S.Ct. 1181, 1186 (2010) ( as used in § 1332(c)(1), "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"). It is undisputed that at the time of the accident, State Farm was a citizen of Illinois and Leigh Bishop was a citizen of Kentucky. Regardless of whether Courtney Duffey was domiciled in Kentucky or Michigan, the court would retain diversity jurisdiction over this action, because plaintiff, State Farm, was not a citizen of either of those states. Accordingly, the court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

## II.  The Michigan Insurance Policy is not ambiguous

### A.  The Policy language

The liability coverage under the Michigan Insurance Policy defines an "insured" to include both the named insured (in this case, David Duffey, referred to in the policy as "you") and "any resident relative." Michigan Insurance Policy at p. 4 (docket no. 40-1 at p. 5). Bishop contends that Courtney is a "resident relative" of David Duffey under the terms of the Michigan Insurance Policy, which defines a "resident relative" as follows:

> ***Resident Relative*** means a ***person***, other than ***you***, domiciled in the same household with the first ***person*** listed as a named insured on the Declarations Page and who is related to that named insured or his or her spouse by blood, marriage or adoption  .  .  .

*Id.*[6]

As an initial matter, Bishop seeks to enforce the Michigan Insurance Policy against Courtney on the ground that the Michigan Insurance Policy is ambiguous, i.e., the policy "mixes" the terms resident and domicile, when it defines a "resident relative" as "a person, other than you, domiciled in the same household  .  .  ." Bishop's Trial Brief at p. 4.  Bishop contends that, despite the fact that this reference to domicile has been "the subject of much litigation" in Michigan for over 30 years, State Farm has continued to use "this ambiguous language." *Id.*  Bishop also points out that the Kentucky policy uses a different and less ambiguous definition for a "relative" covered by the insured's policy which does not "mix" the terms "residence" and "domicile." *Id.* at p. 5.  For this reason, Bishop contends that State Farm's language used in the Michigan Insurance Policy is ambiguous, confusing and subject to more than one reasonable interpretation. *Id.* at pp. 4-5.  The court disagrees.

## B.    Legal standard

This court's jurisdiction is founded upon diversity of citizenship as authorized by 28 U.S.C.  § 1332(a)(1).  Accordingly, the court will apply state law as decided by the Michigan Supreme Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Kessler v. Visteon Corporation*, 448 F.3d 326, 330 (6th Cir. 2006).  If the Michigan Supreme Court has not yet addressed the issue

---

[6] Neither party relies on the second sentence of the definition for a "resident relative,"which provides that "An unmarried and unemancipated child of that named insured or his or her spouse is considered to be domiciled in the same household with that named insured while the child is away at school."  The second sentence is inapplicable to this case, because the "resident relative" (Courtney) was an adult at the time of the accident.

presented, this court "must predict how it would rule, by looking to 'all relevant data,' including

state appellate decisions." *Kessler*, 448 F.3d at 330. "[I]n all cases where a federal court is

exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of

the litigation in the federal court should be substantially the same, so far as legal rules determine the

outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. of New York v.

York*, 326 U.S. 99, 109 (1945).[7]

        Under Michigan law, contractual language is given "its plain and ordinary meaning,

avoiding technical and constrained constructions." *English v. Blue Cross Blue Shield of Michigan*,

263 Mich. App. 449, 471, 688 N.W.2d 523 (2004). "Absent an ambiguity or internal inconsistency,

contractual interpretation begins and ends with the actual words of a written agreement." *Universal

Underwriters Ins. Co. v. Kneeland*, 464 Mich. 491, 496, 628 N.W.2d 491 (2001). The Michigan

Court of Appeals recently summarized Michigan's rules applicable to the interpretation of an

insurance contract:

>         The rules of contract interpretation apply to the interpretation of insurance
> contracts. *Citizens Ins. Co. v. Pro–Seal Serv. Group, Inc.*, 477 Mich. 75, 82; 730
> NW2d 682 (2007). The language of insurance contracts should be read as a whole
> and must be construed to give effect to every word, clause, and phrase. *Klapp v.
> United Ins. Group Agency, Inc.*, 468 Mich. 459, 467; 663 NW2d 447 (2003). Where
> the policy language is clear, a court must enforce the specific language of the
> contract. *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 160; 534 NW2d
> 502 (1995). However, where an ambiguity exists, it should be construed against the
> insurer. *Id.* An insurance contract is ambiguous if its provisions are subject to more
> than one meaning. *Vushaj v. Farm Bureau Gen. Ins. Co.*, 284 Mich.App 513, 515;
> 773 NW2d 758 (2009), citing *Raska v. Farm Bureau Mut. Ins. Co. of Michigan*, 412
> Mich. 355, 362; 314 NW2d 440 (1982). An insurance contract is not ambiguous
> merely because a term is not defined in the contract. *Id.* Any terms not defined in
> the contract should be given their plain and ordinary meaning, *id.*, which may be

---

[7] The court notes that the parties do not dispute that Michigan law applies to the issue in this action.

determined by consulting dictionaries.  *Citizens Ins. Co. v. Pro–Seal Serv. Group, Inc.*, 477 Mich. 75, 84; 730 NW2d 682 (2007).

*McGrath v. Allstate Ins. Co.*, -- N.W.2d --, 2010 WL 4320332  (Mich. App. Nov. 2, 2010).

###  C.      Discussion

Reading the Michigan Insurance Policy "as a whole" and giving "effect to every word, clause, and phrase," the court finds no ambiguity in the policy's use of the phrase "domiciled in the same household" to define a "resident relative" covered by the policy.  While Bishop would prefer that State Farm use the Kentucky definition of a "relative,"[8] the court notes that the Michigan Insurance Policy incorporates statutory language which has evolved into a term of art in Michigan. Specifically, the Michigan Legislature has used the phrase "domiciled in the same household" to determine the priority insurer responsible for paying personal injury protection benefits under Michigan's No-Fault Act.  *See* M.C.L.  § 500.3114(1) ( "Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1)  applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either *domiciled in the same household*, if the injury arises from a motor vehicle accident") (footnote omitted) (emphasis added).  In construing insurance policies which incorporate this statutory language, the Michigan state courts have not found the phrase to be ambiguous.  On the contrary,

---

[8] While defendants apparently contend that the Kentucky definition of a "Relative" is unambiguous, they do not address the two different definitions of "Relative" used by State Farm in Kentucky.  A "specimen" Kentucky State Farm policy includes "Defined words which are used in several parts of the policy" which defines a "Relative" as "a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you*.  It includes *your* unmarried and unemancipated child away at school."  *See* Specimen Kentucky State Farm Policy (docket no. 42-3 at pp. 3-4).  A different definition of "Relative" appears in the Kentucky Policy, "Section II - No Fault Coverage."  *Id.* (docket no. 42-3 at p. 4).  For purposes of Section II, the term "Relative" is defined as: 1. *your spouse*, 2. a *person* related to *you* or *your spouse* by blood, marriage or adoption, and 3. a minor in the custody of *you*, *your spouse* or a *relative*, while residing in *your*  household, even if temporarily residing elsewhere.  *Id.* (docket no. 42-3 at pp. 13-14).

12

this was the phrase construed by the Michigan Supreme Court in *Workman v. Detroit Automobile Inter-Insurance Exchange*, 404 Mich. 477, 274 N.W.2d 373 (1979) and resulted in that court's test for determining domicile under Michigan law. *See Workman*, 404 Mich. at 495-98 (court developed the four-part test regarding domicile in construing the statutory phrase "domiciled in the same household"). *See e.g.*, *Walbro Corp. v. Amerisure Companies*, 133 F.3d 961, 967 (6th Cir. 1998), abrogated on other grounds in *Qualchoice, Inc. v. Rowland*, 367 F.3d 638 (6th Cir. 2004) (observing that "[a]lthough the No–Fault Act does not define the term 'domicile,' the Michigan Supreme Court considered the meaning of the phrase 'domiciled in the same household' in *Workman*); *Cervantes v. Farm Bureau General Insurance Company of Michigan*, 272 Mich. App 410, 414; 726 NW2d 73 (2006) (in determining "whether plaintiffs, as illegal aliens, were 'domiciled in the same household' as Farm Bureau's insureds," the court noted that the Michigan Supreme Court interpreted the same statutory term in *Workman*).

Given that the Michigan Legislature used phrase "domiciled in the same household" as a term of art in the state's No-Fault At, M.C.L. § 500.3101 *et seq.* and that Michigan courts have interpreted the phrase on multiple occasions, this court does not consider State Farm's use of the phrase in its Michigan Insurance Policy to be ambiguous. On the contrary, it is not surprising that an automobile insurance policy designed for use in Michigan would incorporate this phrase which has been used by the Michigan Legislature and construed by Michigan courts since at least 1979.

Accordingly, the court finds that the Michigan Insurance Policy is not ambiguous in using the phrase "domiciled in the same household" to define a "resident relative" of a person insured under the policy.

III.    **Courtney Duffey is not domiciled in Michigan for purposes of being considered a "resident relative" under the Michigan Insurance Policy**

Defendants also contend that on August 19, 2008, Courtney's domicile was her father's residence in Ada, Michigan, and that she is a "resident relative" covered by the Michigan Insurance Policy. The court disagrees.

A.    **Legal standard**

The determination of a person's domicile is a question of fact to be resolved by the trial court. *Goldstein v. Progressive Car Ins Co.*, 218 Mich. App. 105, 111, 553 N.W.2d 353 (1996); *Bronson Methodist Hosp. v. Forshee* 198 Mich. App. 617, 630-631, 499 N.W.2d 423 (1993). Although State Farm filed this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, state law governs the burden of proof applicable to non-federal matters. *Safeco Insurance Company of America v. City of White House, Tennessee*, 191 F.3d 675, 681-82 (6th Cir. 1999). Under Michigan law, the insured bears the burden of proof to show that the policy covered the damage suffered. *See Solomon v. Royal Maccabees Life Insurance Company*, 243 Mich. App. 375, 622 N.W.2d 101 (2000). "A generally recognized principle of insurance law is that the burden of proof lies with the insured to show that the policy covered the damage suffered." *Id.* citing 10 Couch, Insurance, 3d, § 147:29, p. 147-46; *Williams v. Detroit Fire & Marine Insurance Company*, 280 Mich. 215, 218, 273 N.W. 452 (1937).

In 1847, the Michigan Supreme Court first held that "[d]omicile has been defined to be the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *In re High*, 2 Doug. 515, 1847 WL 2636 at *5 (Mich. 1847). "It may be laid down as a settled maxim that every man must have such a national domicile somewhere. It is equally well settled that no person can have more than

14

one such domicile, at one and the same time[.]" *Id.* A person's domicile has also been defined as "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Henry v. Henry*, 362 Mich. 85, 101-102 (1960) (quoting *Williams v. North Carolina*, 325 U.S. 226, 236 (1945) (internal quotation marks omitted)).

The common law drew a distinction between "domicile" and "residence." *Gluc v. Klein*, 226 Mich. 175, 177-78, 197 N.W. 691 (1924).

> The former, in its ordinary acceptation, was defined to be, 'A place where a person lives or has his home,' while 'any place of abode or dwelling place,' however temporary it might have been, was said to constitute a residence. A person's domicile was his legal residence or home in contemplation of law.

*Id.* Despite this common law distinction, Michigan courts have, at times, treated "domicile" and "residence" as synonymous terms, with no distinction between them in legislation "relating to voting, eligibility to hold office, taxation, probate and administration of estates, etc." *Id.* at 178. For example, in *Wright v. Genesee Circuit Judge*, 117 Mich. 244, 75 N.W. 465 (1898), the Michigan Supreme Court stated:

> Residence means the place where one resides, an abode, a dwelling or habitation, especially a settled or permanent home or domicile. Residence is made up of fact and intention. There must be the fact of abode, and the intention of remaining.

*Wright*, 117 Mich. at 245. *See also*, *Reaume v. Silloway v. Tetzlaff*, 315 Mich. 95, 99, 23 N.W.2d 219 (1946) (quoting *Wright*).

While Michigan courts have found the terms "domicile" and "residence" to be synonymous in some contexts, the Michigan Supreme Court continues to recognize the common law distinction between the two terms. *See People v. Dowdy*, 489 Mich. 373, -- N.W.2d --, 2011 WL 2684893 at *4-5 (July 11, 2011) (noting the difference between the terms "domicile" and

15

"residence" as they appear in Michigan's Sex Offender Registration Act; court concluded that even if a homeless sex offender with transient sleeping arrangements could not establish a "residence" as defined in the statute, the offender could still report sufficient information for purposes of establishing a "domicile"). Thus, it is necessary to differentiate between the terms "domicile" and "residence" where construing the terms as synonymous "would effectively render one of the terms nugatory." *Id.* In reaching this determination, the Michigan Supreme Court found it necessary to address the common law distinction between "residence" and "domicile":

> Michigan courts have defined "domicile" as " 'that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.'" Similarly, a domicile is "the place where a person has his home, with no present intention of removing, and to which he intends to return after going elsewhere for a longer or shorter time." More significant to the instant case is that it has long been the law of this state that "[e]very person must have a domicile somewhere." A person may have only one domicile, which continues until the person acquires a different one. Thus, the essential characteristic of a "domicile" that separates it from a "residence" is that, under Michigan law, *every* person has a "domicile."

*Id.* at \*4 (footnotes omitted).

The concept of a single domicile has prevailed throughout Michigan state law for over 160 years, and the Michigan Supreme Court has never changed this rule. *Dowdy*, 489 Mich. 373, 2011 WL 2684893 at \*4; *In re Scheyer's Estate*, 336 Mich. 645, 652 (1953) ("[o]ne cannot be permanently located in more than one place; one cannot be domiciled in more than one place; one cannot intend to remain for an extended period of time in more than one place"); *Beecher v. Common Council of Detroit*, 114 Mich. 228, 230 (1897) ("[t]here can never, in the eye of the law, be more than one domicile of citizenship") (internal quotation marks omitted); *In re High*, 2 Doug. 515, 1847 WL 2636 at \*5. "Thus, domicile is an individual's permanent place of abode where he

16

need not be physically present, and residence is where the individual is physically present much of the time.  An individual consequently may have several residences, but only one domicile." *Eastman v. University of Michigan*, 30 F.3d 670, 673 (6th Cir. 1994).

In determining domicile, each person has a domicile of origin which they are not legally capable of changing as a minor.  *See In re High*, 1847 WL 2636 at *6 (child's domicile was the domicile of his birth or nativity and it continued to be his domicile "until he acquired another, which he could not do until he arrived at full age, and became a person *sui juris*").  *See also*, *Herring v. Mosher*, 144 Mich. 152, 154-55, 107 N.W. 917 (1906) ("[w]e accept the doctrine, as a general proposition, that the domicile of a child is that of its origin, or of its last surviving parent"); *Ortman v. Miller*, 33 Mich.App. 451, 460, 190 N.W.2d 242  (1971) ("[w]hile the residence of an infant quite naturally follows that of parents having custody, on the same principle that a child is emancipated from his parents when he marries, his induction into the armed forces, with or without the consent of his parents, at least where it is according to law, should be deemed to emancipate him") (footnotes omitted); Restatement (Second) of Conflicts of Laws: Domicil [sic] of Minor  § 22 (1) (1971) ("[a] minor has the same domicil as the parent with whom he lives").

"The general rule of domicile respecting adults  .  .  .  is that domicile requires two elements: intent and physical presence, which must concur in time."  *Wisconsin Potowatomies of Hannahville Indian Community v. Houston*, 393 F. Supp. 719, 732 (W.D. Mich. 1973).  Thus, to establish a new domicile, there must be the concurrence of both the intention to establish a new domicile and a transfer of the person's physical presence.  *See  Reaume*, 315 Mich. at 99; *In re Scheyer's Estate*, 336 Mich. at 651 (a permanent home or domicile requires "the fact of abode, and the intention of remaining"); *Wright*, 117 Mich. at 245.  *See In re Barron*, 26 F.2d 106, 108 (E.D.

17

Mich.1928) (in determining whether a person has acquired a new domicile, that person must express "an intent to make a home at the moment, and not to make a home in the future").

When a person reaches the age of majority and is legally capable of establishing a domicile separate from his or her parents, the court looks to nine relevant factors to help in its determination of a person's intent to establish or change domicile. Four of the relevant factors are identified in *Workman*, 404 Mich. at 496-97: 1) the subjective or declared intent of the claimant to remain either permanently or indefinitely in the insured's household; 2) the formality or informality of the relationship between the claimant and the members of the household; 3) whether the place where the claimant lives is in the same house, within the same curtilage, or upon the same premises as the insured; and 4) the existence of another place of lodging for the person alleging domicile.

After *Workman* was decided, the Michigan Court of Appeals enumerated five additional factors to aid courts in determining domicile that may be particularly helpful in situations involving young adults in transition. *See Dairyland Insurance Company v. Auto Owners Insurance Company*, 123 Mich. App. 675, 333 N.W.2d 322 (1983). These five additional factors include: 1) whether the child continues to use the parents' home as the child's mailing address; 2) whether the child maintains some possessions with the parents; 3) whether the child uses the parents' address on the child's driver's license or other documents; 4) whether a room is maintained for the child at the parents' home; and 5) whether the child is dependent on the parents for support. *Fowler v. Auto Club Insurance Association*, 254 Mich. App. 362, 364-65, 656 N.W.2d 856 (2002), citing *Dairyland, supra* at 682. These factors are to be weighed and balanced against each other, and no one factor holds a greater weight than another. *Univ. of Michigan Regents v. State Farm Mutual Ins. Co.*, 250 Mich. App. 719, 730, 650 N.W.2d 129 (2002); *Cervantes*, 272 Mich. App. at 415-16.

18

B.      **Discussion**

1.      **Courtney Duffey's domicile as a minor**

The bulk of the evidence submitted by the parties in support of Courtney's intent regarding domicile involve actions which Courtney performed while she was a minor, i.e., before July 24, 2008.[9]  In reviewing this evidence, the court must be mindful that while Courtney was a minor, she lacked the legal capacity to choose a domicile independent of her parents.  *See Herring*, 144 Mich. at 154-55; *In re High*, 1847 WL 2636 at *6; *Ortman*, 33 Mich. App. at 460;Restatement (Second) of Conflicts of Laws: Domicil [sic] of Minor  § 22 (1).

It is undisputed that Courtney's birth parents were divorced shortly after her birth.  As a minor, it was possible for Courtney to maintain two domiciles, i.e., one with each custodial parent.  In construing Michigan's No-Fault Act, the Sixth Circuit found "that an abundant number of courts have held that a child of divorced parents could be a resident of two separate households for purposes of insurance coverage."  *Walbro*, 133 F.3d at 969 (internal quotation marks omitted).  The court concluded:

> We find the analyses of these other courts and their constructions of the term resident to be persuasive.  We conclude that the synonymous term "domicile" in Michigan's No–Fault Act permits a minor child of divorced parents to be "domiciled" in both of his or her parents' households if the evidence shows that the child actually resided with both parents.  This rule allows a divorced parent to provide insurance coverage for his or her child, without fear that the coverage could disappear whenever his or her child visits the other divorced parent.  The District

---

[9] The age of majority in Michigan is 18. *Woodman ex rel. Woodman v. Kera LLC*, 486 Mich. 228, 237, n. 15, 785 N.W.2d 1 (2010); M.C.L. § 722.52.  "Pursuant to the ordinary language of MCL 722.4, emancipation by operation of law occurs when a minor is legally married, an individual reaches 18 years of age, if the minor is on active duty in the military, or for medical purposes when the minor is in the custody of law enforcement or a prisoner committed to the jurisdiction of the Michigan department of corrections." *People v. Roberts*, -- N.W.2d --, 2011 WL 1878387 (Mich. App. May 10, 2011).

Court's conclusion that a child who resides with both of his divorced parents is legally domiciled only with the parent that has physical custody at the time of the accident could cause grave consequences in cases where one of the divorced parents was uninsured.  Under this approach, a child would have no insurance coverage at all whenever he or she stayed with an uninsured parent who shared custody.  There would also be the problem of the point at which domicile changes when the child is traveling between the parents' residences or is visiting third persons.  Our conclusion that the No–Fault Act allows children of divorced parents to be domiciled in the separate households of both parents who share custody finds additional support in the policy that Michigan's No–Fault Insurance Act is a remedial statute that is "to be construed liberally in favor of the persons intended to be benefitted by the statute." [*Bierbusse v. Farmers Insurance Group*, 84 Mich. App. 34, 37, 269 N.W.2d 297 (1978)]; *accord Dudewicz v. Norris–Schmid, Inc.*, 443 Mich. 68, 77, 503 N.W.2d 645, 649 (1993) (quoting *Bierbusse*, 269 N.W.2d at 298–99).  We need not consider whether a child may be domiciled in the household of a divorced parent in those cases where the parents do not share custody of the child.

*Id.* at 970.  *See also*, *Fontana v. Maryland Casualty Company/Zurich*, Nos. 264127, 264128, 2006 WL 170973 at *4 (Mich. App.  Jan. 24, 2006) ("noting that under Michigan law the domicile or residence of a minor child is not necessarily limited to one household, but "in order for a minor child to be domiciled with both divorced parents, the child must actually reside with both parents at the time of the accident")

        Here, the record establishes that Courtney Duffey's "domicile of origin" was Lansing, Michigan, the place of her birth.  *See In re High*, 1847 WL 2636 at *6.  *See also*, Restatement (Second) of Conflicts of Laws: Domicil [sic] of Origin § 14 (1971) ("(1) The domicil of origin is the domicil which a person has at birth" and  "(2) The domicil of a legitimate child at birth is the domicil of its father at that time, subject to the rule stated in § 22 pertaining to divorce or separation of the parents").  As a young child, Courtney moved with her mother to Kentucky, where Courtenay lived, worked and attended school through her high school graduation in the 2008.  While neither party has provided a copy of a court order authorizing joint custody, the record reflects that Courtney's father shared physical custody and provided financial support.  For example, Courtney

visited her father periodically in Michigan and he claimed her as a dependent on his income tax returns. While Courtney was a minor, in April or May, 2008, she obtained a Michigan driver's license. Based on this record, before she reached age 18, Courtney would have been considered domiciled in Kentucky if she had been involved in an accident while living with her mother, and would have been considered domiciled in Michigan if she had been involved in an accident while living with her father. *See Walbro*, 133 F.3d at 969-70; *Herring*, 144 Mich. at 154-55; *Fontana*, 2006 WL 170973 at *4; *Ortman*, 33 Mich. App. at 460.

A review of Courtney's domicile as a minor, while helpful to the court in providing background on her domiciliary history, is not, however, dispositive of Courtney's domicile on August 19, 2008, the date of the accident. As a minor child of divorced parents living in two different states, Courtney could claim two domiciles. *See Walbro*, 133 F.3d at 969-70; *Herring*, 144 Mich. at 154-55; *Fontana*, 2006 WL 170973 at *4; *Ortman*, 33 Mich. App. at 460. However, once Courtney attained adulthood on July 24, 2008, and had the capacity to choose a domicile, she could choose only one domicile. *Eastman*, 30 F.3d at 673; *Dowdy*, 489 Mich. 373, 2011 WL 2684893 at *4; *Beecher*, 114 Mich. at 230; *In re High*, 2 Doug. 515, 1847 WL 2636 at *5.

### 2. Courtney Duffey's intent regarding her domicile

### a. The *Workman* factors

### (i) the subjective or declared intent of the claimant to remain either permanently or indefinitely in the insured's household

There is little evidence of Courtney's intent to be a member of her father's household. While Courtney obtained a Michigan driver's license as a minor, this was not evidence of intent to establish a domicile in Michigan, because Courtney was legally incapable of choosing a new domicile at that time. Once Courtney became an adult, however, her retention of the Michigan

driver's license was evidence of an intent to become part of her father's household in Michigan. Against this expressed intent, the court weighs other evidence which suggests that Courtney chose to be domiciled in Kentucky. While she may have expressed an intent to reside in Michigan at some point in the future, this intent was not concurrent with a physical presence in Michigan. There is no evidence that Courtney ever resided in her father's house in Michigan as an adult. Rather, the evidence established that Courtney was still living in Louisville, Kentucky, and driving her mother's vehicle at the time of the accident. In addition, Courtney maintained a bank account in Louisville, Kentucky, continued to have her bank statement mailed to her address in Louisville, and returned to Louisville when her classes ended at the University of Michigan. The weight of the evidence established that Courtney expressed an intent to be domiciled in Louisville, Kentucky. Accordingly, this factor favors domicile in Kentucky.

### (ii) the formality or informality of the relationship between the claimant and the members of the household

Plaintiff had the same relationship (daughter) to the owners of both the house in Kentucky (her mother) and the house in Michigan (her father). Accordingly, this factor does not favor either a domicile in either state.

### (iii) whether the place where the claimant lives is in the same house, within the same curtilage, or upon the same premises as the insured

There is no evidence that Courtney lived in the same house, curtilage or premises as her father in Ada, Michigan between July 24, 2008 and the date of the accident. The evidence before the court establishes that Courtney did not physically move to Michigan until she left for college on September 1, 2008. In addition, the evidence established that when Courtney moved to

Michigan, she physically resided in Ann Arbor, Michigan, not with her father on the other side of the state, in Ada, Michigan.   Accordingly, this factor favors domicile in Kentucky.

**(iv) the existence of another place of lodging for the person alleging domicile** [10]

There is no evidence that Courtney lived in the same house as her father in Ada, Michigan between July 24, 2008 and the date of the accident.  On the contrary, the evidence reflects that Courtney was living with her mother in Louisville, Kentucky prior to moving to Michigan on September 1, 2008.   Accordingly, this factor favors domicile in Kentucky.

**b.  The *Dairyland* factors**

**(i)  whether the child continues to use the parents' home as the child's mailing address**

The evidence establishes that Courtney used her Louisville, Kentucky mailing address before the accident. There is no evidence that Courtney, upon reaching the age of majority, advised the University of Michigan, her bank, or any other entity that her mail should be sent to her father's house in Ada, Michigan.  This factor favors a domicile in Kentucky.

**(ii) whether the child maintains some possessions with the parents**

There is no evidence that Courtney stored any possessions at her father's house in Ada, Michigan, at any time.  Accordingly, this factor favors domicile in Kentucky.

**(iii) whether the child uses the parents' address on the child's driver's license or other documents**

As previously discussed, Courtney used her father's Ada, Michigan, address on her Michigan driver's license, while at the same time using the Louisville, Kentucky address for her

---

[10] The court notes that Courtney Duffey has been defaulted in this action and has made no allegations regarding domicile.  The only party that has appeared in this action, co-defendant, Leigh Bishop, is the person alleging that Courtney was domiciled in Michigan rather than Kentucky.

bank account.  There is no evidence that Courtney, upon reaching the age of majority, advised the University of Michigan to change her contact address from Louisville, Kentucky to Ada, Michigan. Accordingly, this factor favors a domicile in Kentucky.

### (iv) whether a room is maintained for the child at the parents' home

As previously discussed, there is no evidence that Courtney's father maintained a room for her at his house in Ada, Michigan, or that Courtney kept any of her possessions in his home.  Rather, she lived with her mother in Louisville, Kentucky.  Accordingly, this factor favors a domicile in Kentucky.

### (v) whether the child is dependent on the parents for support

The evidence establishes that Courtney received financial support from both parents. Accordingly, this factor does not favor either a domicile in either state.

### c.     Conclusion regarding Courtney Duffey's intent regarding her domicile

Based on this review, seven of the *Workman* and *Dairyland* factors reflect Courtney's intent to be domiciled in Louisville, Kentucky, two of the factors are neutral as to her intent, and none of the factors reflect her intent to be domiciled in Ada, Michigan.   Accordingly, I find that as of the date of the accident, August 19, 2008, Courtney Duffey was domiciled in Louisville, Kentucky.

### 3.     Courtney Duffey did not have a concurrent physical presence in Ada, Michigan

Finally, domicile requires the concurrence of intent and physical presence.  *See Wisconsin Potowatomies*, 393 F. Supp. at 732; *In re Barron*, 26 F.2d at 108;  *Reaume*, 315 Mich. at 99; *In re Scheyer's Estate*, 336 Mich. at 651;*Wright*, 117 Mich. at 245.  There is no evidence that from July 24, 2008 through August 19, 2008, Courtney had a physical presence in Ada, Michigan.

Rather, the only evidence indicates that after that date, Courtney was physically present in Louisville, Kentucky, where, on August 19, 2008, she was involved in a traffic accident while driving her mother's vehicle. Courtney did not physically move to Michigan until September 1, 2008, at which time she went to the University of Michigan for her college classes, not to her father's house in Ada, Michigan. Thus, even if the court had found that Courtney expressed the intent to acquire a domicile with her father in Ada, Michigan, any such intent was not concurrent with a transfer of her physical presence to Ada. I find that Courtney did not have the concurrent intent and physical presence required to be domiciled in Ada, Michigan.

## CONCLUSION

Based on the evidence presented, I find that on August 19, 2008, Courtney Duffey was domiciled in Louisville, Kentucky; that on August 19, 2008, Courtney Duffey was not a "resident relative" of David Duffey under the terms of the Michigan Insurance Policy; and that said policy does not provide liability coverage for Courtney Duffey for the accident involving Leigh Bishop which occurred on August 19, 2008 in Louisville, Kentucky. Accordingly, declaratory judgment shall be entered in favor of State Farm consistent with this opinion.


Dated:  September 28, 2011                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge